## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. WIRELESS CORPORATION, INC., | ) | Case No. 01-10262 |
| WIRELESS LOCATION | ) | through 01-10264 (CSS) |
| TECHNOLOGIES, INC., AND WIRELESS | ) | |
| LOCATION SERVICES, INC., | ) | |
|  Debtors. | ) | Jointly Administered |
| | ) | |
| THE LIQUIDATING TRUST OF U.S. WIRELESS | ) | |
| CORPORATION, INC., WIRELESS LOCATION | ) | |
| TECHNOLOGIES, INC., AND WIRELESS | ) | |
| LOCATION SERVICES, INC., | ) | |
|  Plaintiff, | ) | |
| | ) | |
|  v. | ) | Adv. Pro. No. 03-55654 (CSS) |
| | ) | |
| NEERAJ BHATNAGAR, | ) | |
|  Defendant | ) | |
| | ) | |
| | ) | |
| NEERAJ BHATNAGAR, | ) | Civil Action No. 06-21 (GMS) |
| | ) | |
|  Appellant, | ) | |
| | ) | |
|  v. | ) | |
| | ) | |
| THE LIQUIDATING TRUST OF U.S. WIRELESS | ) | |
| CORPORATION, INC., WIRELESS LOCATION | ) | |
| TECHNOLOGIES, INC., AND WIRELESS | ) | |
| LOCATION SERVICES, INC., | ) | |
| | ) | |
|  Appellee. | ) | |

## ANSWERING BRIEF OF APPELLEE,
## THE LIQUIDATING TRUST OF U.S. WIRELESS CORPORATION, INC.,
## WIRELESS LOCATION TECHNOLOGIES, INC.
## AND WIRELESS LOCATION SERVICES, INC. IN OPPOSITION

Date:  April 10, 2007

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
Joanne B. Wills (No. 2357)
Christopher A. Ward (No. 3877)
919 Market Street, Suite 1000
Wilmington, DE  19801-3062
Tel.:  (302) 426-1189
Fax:  (302) 426-9193
jwills@klehr.com
cward@klehr.com

Counsel to Appellee

DEL1 65973-3

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION...................................................................... 1

STATEMENT OF ISSUE ON APPEAL AND STANDARD OF REVIEW.................... 1

Issues on Appeal ............................................................................................. 1

Standard of Review.......................................................................................... 1

I.   NATURE AND STAGE OF PROCEEDINGS ............................................... 2

II.  SUMMARY OF ARGUMENT ...................................................................... 4

III. STATEMENT OF FACTS ............................................................................ 4

    A.  The Debtors Entered into an Incentive Agreement with the Defendant ............... 4

    B.  The Debtors Remit Payment for Withholding Taxes from Own Funds ................. 6

    C.  The Bankruptcy Case ......................................................................... 7

    D.  The Adversary Proceeding................................................................... 8

IV.  ARGUMENT.............................................................................................. 8

    A.  The Debtors' Funds Paid to the IRS on Behalf of the Defendant's Tax
        Obligations are Property of the Estate .................................................. 8

    B.  The Debtors Used Their Own Funds to Pay the Defendant's Tax
        Obligations and Did Not Create a Trust Relationship with the Defendant........... 9

    C.  The Withholding Tax Case Law Is Inapplicable to the Instant Case................... 11

V.   CONCLUSION............................................................................................ 13

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d
     76 (3d Cir. 1999)...................................................................................................... 1

Baroda Hills Investment, Ltd. V. Telegroup, Inc., 281 F.3d 133 (3d Cir.
     2002) ........................................................................................................................ 2

Begier v. IRS, 496 U.S. 53 (1990) ................................................................................. 11

City of Farrell v. Sharon Steel Corp., 41 F.3d 91 (3d Cir. 1994)..................................... 10

Goldberg v. New Jersey Lawyers' Fund, 932 F.2d 273 (3d Cir.1991) ............................ 10

In re Lenox Healthcare, Inc., 343 B.R. 96 (Bankr. D.Del. 2006) .................................... 13

Mellon Bank, N.A. v. Metropolitan Communications, Inc., 954 F.2d 635
     (3d Cir. 1991)............................................................................................................ 2

In re Northwestern Corp., 352 B.R. 32 (D.Del. 2006) ........................................................ 1

In re Perma Pacific Properties, 983 F.2d 964 (10th Cir. 1992).......................................... 1

Universal Minerals, Inc. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981) ....................... 2

### STATUTES

11 U.S.C. §541(a)(1)........................................................................................................ 9

11 U.S.C. §§  542, 548 and 550 and California Code §§ 3439.04, 3439.07...................... 2

28 U.S.C. §1334(e) .......................................................................................................... 9

28 U.S.C. § 158(a) ........................................................................................................... 1

28 U.S.C. § 7501 ............................................................................................................ 12

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal under 28 U.S.C. § 158(a).  *See American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

## STATEMENT OF ISSUE ON APPEAL AND STANDARD OF REVIEW

### *Issue on Appeal*

The issue on appeal is:

Whether the Bankruptcy Court correctly determined that since no money was ever withheld from the Defendant's additional compensation, that taxes paid from the Debtors' funds to the IRS were never held in trust for the Defendant and are rightfully recoverable by the Plaintiff.

### *Standard of Review*

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), on appeal, the District Court may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.   In an appeal from the Bankruptcy Court, the District Court sits as an appellate court and applies the same standard of review as those governing appellate review in other cases.  *In re Perma Pacific Properties*, 983 F.2d 964, 966 (10th Cir. 1992).

The District Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, and reviews its legal conclusions *de novo.  In re Northwestern Corp.*, 352 B.R. 32 (D.Del. 2006).  In reviewing mixed questions of law and fact, the District Court accepts the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'"

*Mellon Bank, N.A. v. Metro Communications, Inc.*, 954 F.2d 635, 642 (3d Cir. 1991) (*quoting Universal Minerals, Inc. C.A. Hughes & Co.*, 669 F.2d 98, 101-102 (3d Cir. 1981)). The appellate responsibilities of the District Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the first instance. *Baroda Hills Inv., Ltd. V. Telegroup, Inc.*, 281 F.3d 133, 136 (3d Cir. 2002).

## I.     NATURE AND STAGE OF PROCEEDINGS

Appellee, the Liquidating Trust of U.S. Wireless Corporation, Wireless Location Technologies, Inc. and Wireless Location Services, Inc. (the "Liquidating Trust" or "Appellee") is the successor-in-interest to the claims of the above-captioned debtors, U.S. Wireless Corporation, Wireless Location Technologies, Inc. and Wireless Location Services, Inc. (collectively, the "Debtors"), pursuant to the Second Amended Consolidated Chapter 11 Plan of Liquidation of the Debtors (the "Plan") approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by order dated June 10, 2003.

On August 28, 2003 the Liquidating Trust instituted an adversary proceeding against Neeraj Bhatnagar (the "Defendant" or "Appellant") in the Bankruptcy Court, Adversary Proceeding 03-55654 (CSS). On that same date, the Liquidating Trust filed its Complaint for Turnover and Recovery of Transfers (the "Complaint") under 11 U.S.C. §§ 542, 548 and 550 and California Code §§ 3439.04, 3439.07 and 3439.08(b) against the Defendant [Adv. Pro. D. I. 1].

Prior to the Debtors' bankruptcy filing, the Debtors entered into certain agreements with various employees, officers and directors affording them an opportunity to acquire a

2

proprietary interest in the Debtors.  These proprietary interests served as additional compensation to the employees, officers and directors who received them.  It was a taxable event for an employee, officer or director to exercise this option to purchase a proprietary interest in the Debtors.  Upon the occurrence of this taxable event, certain taxes were due to the Internal Revenue Service (the "IRS").  Prior to the Petition Date, the Debtors paid the taxes due from employees, officers and directors who had exercised options directly to the IRS without first withholding these funds from the compensation received by the employees, officers and directors.  The funds paid to the IRS were the Debtors' funds and were never withheld from the employees, officers or directors.  The Defendant was one such employee who exercised options and from whom the Debtors did not withhold any taxes with respect to the exercise of those options.  Rather, the Debtors remitted their own funds to the IRS for payment of the Defendant's tax obligations.

In the chapter 11 case, the Liquidating Trust asserted that it is entitled to recover the taxes paid on behalf of the Defendant under a theory of Unjust Enrichment (Count I), Breach of Contract (Count II), Avoidance and Recovery of a Fraudulent Transfer under the Bankruptcy Code (Count III) and Avoidance and Recovery of a Fraudulent Transfer under applicable California state law (Count IV). On May 12, 2004, Defendant filed an Answer and Affirmative Defenses To Complaint [D.I. 7].

Thereafter, Defendant filed its Motion for Judgment on the Pleadings Pursuant to Bankruptcy Rule 7012(b) (the "Motion") seeking dismissal of those counts in the Complaint predicated on a transfer of an interest of the Debtors in property.  Defendant contended, as a matter of law, that the Debtors never had an interest in the funds used to pay the taxes because the funds were trust fund taxes paid in trust for the government.

3

In its Memorandum Opinion dated November 23, 2005 denying Defendant's Motion, the Bankruptcy Court stated that "[s]ince the Debtors never collected or withheld any money from Bhatnagar, no such trust could have been created ...[t]he property belonged to the Debtors and is, therefore, potentially recoverable." A copy of the Memorandum Opinion can be found at Exhibit A of Appellant's Opening Brief.

Thereafter, on December 12, 2005, Appellant filed its Notice of Appeal from the Memorandum Opinion. On January 22, 2007, this Court approved the parties' stipulated briefing schedule. On March 5, 2007, Appellant filed its Opening Brief.

## II.    SUMMARY OF ARGUMENT

The only issue on appeal is whether the Bankruptcy Court correctly determined that since no money was ever withheld from the Defendant's compensation, that taxes paid from the Debtors' funds to the IRS were never held in trust for the Defendant and are rightfully recoverable by the Plaintiff.

The Defendant contends that the funds paid to the IRS were trust fund taxes being held in trust by the Debtors for the IRS. However, there was never any monies withheld from the Defendant's compensation, nor did the Defendant pay any funds over to the Debtors to pay his tax obligations. Therefore, the funds paid to the IRS were the Debtors' monies that were transferred to the IRS and were not trust fund taxes being held for the benefit of the Defendant. The Debtors used their own cash funds to pay the Defendant's tax obligations and did not use funds that were being held in trust to pay such obligations. Accordingly, the Bankruptcy Court's decision below should be affirmed.

## III.    STATEMENT OF FACTS

### A.    The Debtors Entered into an Incentive Agreement with the Defendant

4

Prior to the Petition Date, the Debtors developed a network based proprietary technology to locate mobile telephone subscribers by recognizing the pattern of the radio waves radiating from a subscriber's handset. *Complaint* at ¶6. In order to provide an incentive to key management employees, the Debtors entered into an incentive agreement (the "Incentive Agreement") with the various employees, officers and directors, including the Defendant, affording the Defendant an opportunity to acquire a proprietary interest in the Debtors. *Complaint* at ¶13. These proprietary interests served as additional compensation to the employees, officers and directors. *Complaint* at ¶13. Under the Incentive Agreement, certain employees, officers and directors were given stock options (the "Stock Options") and/or restricted shares (the "Restricted Shares" and together with the Stock Options collectively referred to as the "Stock Rights"). *Complaint* at ¶14.

Pursuant to the Internal Revenue Code, the receipt of restricted stock and/or the exercise of the stock options are taxable events, requiring the recipient to pay, and the Debtors to withhold, applicable federal income, social security and Medicare taxes, and applicable state income tax (collectively, the "Withholding Taxes") on the difference between the fair market value of the stock on the date of the grant and the amount paid for the stock. *Complaint* at ¶15. Defendant was responsible for the payment of Withholding Taxes due and owing to the IRS in regard to the receipt of shares under his Stock Rights. *Complaint* at ¶16.

During fiscal year 1999, Defendant exercised 23,333 of his Stock Options and received $12,500 in Restricted Stock, causing him to earn $221,038.69 in additional income and incur $61,890.83 in federal income taxes, $2,116.08 in social security and

5

$3,205.06 in Medicare, and $13,262.32 in state income taxes.  The tax consequences for Defendant are set forth in Defendant's Amended W-2 form attached to the Complaint and incorporated therein as Exhibit A.  *See Complaint* at ¶17.

### B.    The Debtors Remit Payment for Withholding Taxes from Own Funds

In October or November 2001, the Debtors issued a letter to Defendant advising him that an audit revealed that the Debtors' former management failed to report and withhold the Withholding Taxes in connection with the Restricted Stock and/or Stock Option transactions of certain employees, officers and directors, including Defendant. *Complaint* at ¶18.  As a result, the Debtors amended the Defendant's Form W-2 for the years 1999 and 2000 to reflect the amount of Withholding Taxes that were to be reported and withheld by the Debtors. *Complaint* at ¶19.  In addition to amending the Defendant's Form W-2, the Debtors remitted directly to the IRS its own funds to satisfy the Defendant's Withholding Taxes, which were due to the IRS. *Complaint* at ¶20.

The letter addressed to the Defendant also provided that, although the Debtors directly paid the Withholding Taxes, Defendant was responsible for the full tax obligation incurred as to his receipt of Restricted Stock and/or exercise of Stock Options.  Thus, the Debtors had a claim against Defendant for the recovery of the Withholding Taxes paid on Defendant's behalf to the IRS. *Complaint* at ¶21.

Defendant's receipt of Restricted Stock and/or his exercise of his Stock Options were taxable events under the Internal Revenue Code. *Complaint* at ¶22.  As a result of receiving the Restricted Stock and/or exercising his Stock Options, the Defendant received additional income that was subject to Withholding Taxes. *Complaint* at ¶23.  Defendant is

6

individually responsible for payment of his respective Withholding Taxes. *Complaint* at ¶24. At the time the Restricted Stock was received and/or the Stock Options were exercised, the Defendant did not pay the Withholding Taxes due thereon. *Complaint* at ¶25, 26.

Upon information and belief to the Debtors, at no time did the Defendant pay directly to the IRS, appropriate state agency or the Debtors, the Withholding Taxes due on Defendant's receipt of Restricted Stock and/or exercise of his Stock Options. *Complaint* at ¶27. Rather, on August 28, 2001, the day before the Debtors filed for bankruptcy protection, the Debtors paid on behalf of Defendant, the Withholding Taxes and all penalties and interest thereon as to the Restricted Stock received and/or the Stock Options exercised by Defendant. *Complaint* at ¶28. The total amount of Withholding Taxes, penalties and interest paid by the Debtors to the IRS on behalf of the Defendant was $80,474.29. *Complaint* at ¶29. *Complaint* at ¶30. At the time the Withholding Taxes were paid, the Debtors were insolvent. *Complaint* at ¶31.

### C.    The Bankruptcy Case

On August 29, 2001, the Debtors filed separate voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"). On April 9, 2003, the Debtors filed their Plan under which the Debtors proposed to transfer all remaining assets of their estates to the Liquidating Trust. On June 10, 2003, this Court entered an Order confirming the Plan.

Pursuant to the Plan and Confirmation Order, the Debtor's estates were substantively consolidated, resulting in a single entity consisting of the combined assets

7

and liabilities of U.S. Wireless Corporation, Wireless Location Services, Inc. and Wireless Location Technologies, Inc. All rights, title and interest of the Debtors in all remaining assets, including causes of action, were transferred to the Liquidating Trust.

Executive Sounding Board Associates, Inc. was appointed pursuant to the Plan and Confirmation Order as Liquidating Agent for the Liquidating Trust. Article VIII and Article III of the Liquidating Trust Agreement grant the Liquidating Agent authority to pursue all causes of action of the Debtors.

### D.    The Adversary Proceeding

The status of the underlying adversary proceeding is set forth above in the "Nature and Stage of Proceedings". The adversary proceeding remains open pending the resolution of this appeal.

## IV.    ARGUMENT

### A.    The Debtors' Funds Paid to the IRS on Behalf of the Defendant's Tax Obligations are Property of the Estate.

In its Opening Brief, the Defendant asserts that the Withholding Taxes are trust fund taxes and not property of the Debtors' estates. Section 541 of the Bankruptcy Code creates the bankruptcy estate, which consists of all the property that will be subject to the jurisdiction of the Bankruptcy Court. *See* 28 U.S.C. §1334(e). Generally speaking, a bankruptcy estate includes "all legal or equitable interests in property as of the commencement of the case." 11 U.S.C. §541(a)(1).

The most significant limitation in determining the scope of property of the estate is one of timing. Under §541(a), the bankruptcy estate consists of all of the Debtors' legal and equitable property interests that existed as of the commencement of the case, that is, as

8

of the time the bankruptcy petition is filed. In addition, an estate may acquire property after the date of the filing of the petition that also constitutes property of the estate under §541(a). This paragraph is broad, including all kinds of property, both tangible and intangible, causes of action, and all other forms of property. Section 541(a)(1) further includes any property recovered by the Trustee using the turnover powers conferred by §542 of the Bankruptcy Code, provided the property was merely out of the possession of the debtor, yet remained property of the debtor.

In the case at bar, Defendant makes the assertion that the Withholding Taxes paid by the Debtors to the IRS are "trust fund taxes" and thus, not property of the estate. This assertion is incorrect based on the record before this Court. Defendant has misconstrued its interpretation of "trust funds" and the facts of the instant case.

**B.** **The Debtors Used Their Own Funds to Pay the Defendant's Tax Obligations and Did Not Create a Trust Relationship with the Defendant.**

"[T]o establish rights as a trust recipient, a claimant must make two showings: (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 91 (3d Cir. 1994) (*citing Goldberg v. New Jersey Lawyers' Fund,* 932 F.2d 273, 280 (3d Cir.1991)). The Defendant is unable to establish that a trust relationship existed between the Debtors and the Defendant since the Debtors never withheld any funds from the Defendant's compensation. As such, the Debtors never created a trust relationship with the Defendant since the Debtors never withheld any monies from the Defendant to hold in trust as withholding taxes to be paid over to the IRS.

9

As a result of receiving the Restricted Stock and/or exercising his Stock Options, Defendant received additional income, which was a taxable event and subject to a tax obligation chargeable against the Defendant. *Complaint* at ¶23. The Defendant was individually responsible for payment of his Withholding Taxes. *Complaint* at ¶24. Upon learning of its failure to withhold and report the Withholding Taxes, the Debtors paid, on behalf of the Defendant, Defendant's Withholding Tax obligations, and all penalties and interest thereon as it pertained to the Restricted Stock and/or Stock Options exercised by the Defendant. *Complaint* at ¶28. No money was ever withheld from the Defendant's compensation to pay the Withholding Taxes and the Debtors paid the Withholding Taxes from their own funds. The payment of the Withholding Taxes on behalf of the Defendant was a transfer of the Debtors' interest in property. *Complaint* at ¶48. Thus, the Debtors' funds remitted to the IRS were not funds withheld from the Defendant and therefore held in trust for the benefit of the IRS, as asserted by the Defendant.

Arguably, if money had been withheld from the Defendant's compensation, it could be argued that the money would be held in trust until remittance to the IRS. However, no monies were withheld from the Defendant. Rather, upon learning of the failure to withhold taxes from Defendant's compensation,, the Debtors undertook the Defendant's obligation to pay the Withholding Taxes to the IRS in satisfaction of the Defendant's withholding obligations. *Complaint* at ¶28. This is clearly distinguishable from a circumstance wherein a debtor, prepetition, transfers funds withheld from employee's paychecks and thereafter seeks to recover those payments back from the IRS as an avoidable preference. Accordingly, the Withholding Taxes forwarded to the IRS were the

10

Debtors' funds and were not withheld from the Defendant's additional compensation; the funds were property of the estate and not held in trust.

**C.     The Withholding Tax Case Law Is Inapplicable to the Instant Case**

The Defendant relies almost exclusively on *Begier v. IRS*, 496 U.S. 53 (1990) as controlling precedent with respect of trust fund taxes and property of the estate. In *Begier*, as an enforcement measure, the IRS required American International Airways, Inc. ("AIA") to set up a segregated bank account for delinquent trust fund taxes. Thereafter, AIA paid its trust fund taxes from both the segregated trust fund account and AIA's general operating account.

After conversion of AIA's chapter 11 case, the chapter 7 trustee sought to recover all payments related to trust fund taxes regardless of which account the payments were made. At the trial court level, the Bankruptcy Court only allowed recovery of the amounts paid from the general operating account, as these amounts were found to be property of the bankruptcy estate. The Bankruptcy Court found that the payment of the trust fund taxes from the segregated account were not property of the debtor's estate. *Begier* at 55. On appeal, the District Court affirmed the Bankruptcy Court's decision.

On further appeal, the Third Circuit reversed and held that the prepetition payment of withholding tax obligations could not be avoided as the funds held in trust were not property of the estate. The United Supreme Court affirmed the Third Circuit's decision and held that payments from AIA's general operating account to the IRS did not constitute property of the estate as these funds did not belong to the debtor and were being held in trust for the IRS.

11

The Supreme Court found that, pursuant to 28 U.S.C. § 7501, that AIA was obligated to collect the taxes at the time of payment and hold them in trust for the IRS, regardless of whether the funds were actually placed in a segregated trust account. *Beiger* at 66. The Supreme Court did not differentiate whether AIA placed the withholding obligations it collected in trust or in AIA's general operating account and found that the debtor voluntarily paying its trust fund obligations abrogated the need to trace the withholding obligations held in trust to the amounts paid by AIA. *Beiger* at 66-67.

The Defendant contends that the instant case falls squarely within the *Beiger* ruling. However, the Defendant fails to acknowledge that in the instant matter, the Debtors never withheld any funds from the Defendant's compensation, nor did the Defendant pay any funds directly to the IRS, to satisfy his tax obligation. The funds used to pay the Defendant's taxes were the Debtors' own funds. This fact is discernible from the facts found in the line of cases cited by the Defendant and renders the *Beiger* holding inapposite.

The case at bar is clearly distinguishable from the cases cited by the Defendant. In *Beiger*, as well as *In re Lenox Healthcare, Inc.*, 343 B.R. 96 (Bankr. D.Del. 2006), it is not disputed that funds were withheld from the respective employees and were due to the taxing authority. In this case, the funds used by the Debtors to satisfy the Defendant's tax obligations were the Debtors' funds and belonged to the Debtors at all times. The Debtors never entered into a trust relationship with the Defendant and never held monies belonging to the Defendant in trust for the benefit of the Defendant. More importantly, the Debtors never collected the taxes from the Defendant or otherwise established a trust fund for payment of the Defendant's tax obligations. Therefore, the Defendant's reliance on *Beiger*

12

and *Lenox* is clearly misplaced.  Accordingly, the Bankruptcy Court's decision should be affirmed.

## V.    CONCLUSION

For the foregoing reasons, the Liquidating Trust for U.S. Wireless Corporation Inc., Wireless Location Technologies, Inc. and Wireless Location Services, Inc. respectfully requests that this Court affirm the Bankruptcy Court's Memorandum Opinion and Order denying the Defendant's Motion.

Date:  April 10, 2007

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

 */s/  Christopher A. Ward*
Joanne B. Wills (No. 2357)
Christopher A. Ward (No. 3877)
919 Market Street, Suite 1000
Wilmington, DE  19801-3062
Tel.:  (302) 426-1189
Fax:  (302) 426-9193
jwills@klehr.com
cward@klehr.com

Counsel to The Liquidating Trust of U.S.
Wireless Corporation, *et al.*

13